**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PATRICK C. HORRELL,**<br>*Plaintiff*,<br>v.<br>**AT&T MOBILITY, LLC, *et al.*,**<br>*Defendants*. | Civil Action No. 25-cv-2017 (TSC) |

## MEMORANDUM OPINION

Plaintiff Patrick Horrell brings common law and statutory claims against Defendants AT&T Mobility, LLC ("AT&T") and US Mobile, Inc., seeking damages for injuries caused by scammers who obtained control over his cell phone number. Before the court are US Mobile's Motion to Dismiss the Complaint, ECF No. 16, and Plaintiff's Motion to Amend the Complaint, ECF No. 24. For the following reasons, the court will GRANT US Mobile's motion and GRANT in part and DENY in part Plaintiff's motion.

## I. BACKGROUND

Plaintiff claims he received a phone call on June 24, 2025 from an individual purporting to work at AT&T, his service provider, informing him about a supposedly fraudulent order placed from his account. Am. Compl. ¶ 15, ECF No. 5. Concerned, Plaintiff asked the caller for help, who in turn asked Plaintiff for a numerical code that had just been sent to his phone. *Id.* Plaintiff duly provided the code. *Id.* Unbeknownst to Plaintiff, he had just enabled scammers to initiate a "port-out" of his number, i.e. a transfer of the line from AT&T to a different service provider—

here, US Mobile. *Id.* ¶¶ 50–51. US Mobile, unaware that the port-out had been initiated by scammers, processed the transfer. *See id.* ¶¶ 26, 31. Once the port-out was complete, the scammers seized control of Plaintiff's number. *Id.* ¶ 21. They received all calls and messages destined for him and sent lewd and threatening texts to his friends and family. *Id.* ¶¶ 21, 24. Within hours, they had used the number to break into Plaintiff's bank and email accounts. *Id.* ¶ 20. Plaintiff claims that he was unable to perform his professional obligations as an expert witness and a substitute decision-maker for individuals with psychiatric disorders because he was unable to control his communications. *Id.* ¶¶ 43–44.

Distressed, Plaintiff contacted AT&T's fraud center and lodged a complaint "concerning the abrupt termination of his service." *Id.* ¶ 19. When he did not hear back, he visited a local AT&T store on June 25, where he learned that his number had been transferred to US Mobile, and that AT&T had already asked US Mobile to return it. *Id.* ¶ 26. Seeking further updates, Plaintiff emailed AT&T's legal office and CEO. *Id.* ¶ 27. On June 26, an apparent AT&T employee wrote back, informing him that the company "ha[d] already supplied" US Mobile with "proof of [Plaintiff's] ownership" over the phone number. *Id.* ¶ 31. Plaintiff did not regain control over his phone number until July 1. *Id.* ¶ 39.

Plaintiff sued AT&T and US Mobile on June 27, seeking $50 million in damages for the "severe reputational, emotional, physical, financial, and other loss" he suffered due to US Mobile's gross negligence, and its violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901–28-3913 ("CPPA"), and the Federal Communications Act, 47 U.S.C. §§ 206, 222 ("FCA"). Am. Compl. ¶ 84; *see id.* ¶¶ 76–130. US Mobile moved to dismiss the Complaint under Federal Rules 12(b)(1) and 12(b)(6), arguing that Plaintiff lacked standing to

assert his statutory claims, and that, in any event, he failed to state a claim for relief under any of his causes of action. *See* Mot. to Dismiss at 6–16, ECF No. 16. Before filing his opposition brief, Plaintiff moved to amend the Complaint. ECF No. 24. AT&T consented to the proposed amendments, *see id.* ¶ 1, but US Mobile opposed the motion. ECF No. 29.

## II. ANALYSIS

### A. US Mobile's Rule 12(b)(1) Motion to Dismiss

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A threshold requirement for such jurisdiction is that a plaintiff have "standing to sue under Article III of the Constitution." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). To establish standing, a plaintiff must demonstrate "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Id.* at 380. A Rule 12(b)(1) motion to dismiss for lack of standing tests whether a plaintiff can satisfy these requirements. *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). If the plaintiff is unable to "bear[] the burden of establishing" standing, the court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *see id.* at 94.

At the outset, the court notes that Plaintiff cannot demonstrate standing merely by alleging that the CPPA and FCA grant him "statutory right[s]" and "authorize [him] to sue to vindicate th[ose] right[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). He must identify real-world harm that he suffered because of

US Mobile's actions. *See id.* at 426–27. And that harm must be relevant to the underlying cause of action. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

With these principles in mind, it is clear that Plaintiff lacks standing to bring his CPPA claim because he has failed to demonstrate any relevant injury traceable to US Mobile's conduct. Plaintiff claims to have been deceived by US Mobile's representations on its website that "[a]ny subscriber accounts without unique, accurate, and verifiable customer identity information are subject to immediate line suspension without refund or prior notice." Pl.'s Opp'n at 3, ECF No. 23 (emphasis omitted). According to Plaintiff, "there was nothing 'immediate' about his line's suspension," as US Mobile did not transfer his phone number back to AT&T for nearly a week after it had learned of the fraud. *Id.* at 4; *see* Am. Compl. ¶¶ 26, 31. This, Plaintiff argues, entitles him to relief under § 28-3904 of the CPPA, which prohibits "[u]nfair or deceptive trade practices," including "misrepresent[ations] as to a material fact." D.C. Code § 28-3904, 28-3904(e). But whether or not US Mobile misrepresented the speed of its fraud-resolution process, Plaintiff could not have been deceived by their online statements because he did not read them until he visited US Mobile's website on June 30. US Mobile's Opp'n at 15, ECF No. 29; *see Doe v. Bozzuto Mgmt. Co.*, No. 23-cv-3360, 2024 WL 3104550, at *8 (D.D.C. June 24, 2024) (dismissing plaintiff's CPPA claims because her injury was not caused by defendant's misrepresentations). To the extent that Plaintiff claims he was misled *after* he became aware of US Mobile's policy, that argument is severely undermined by the fact that US Mobile returned the phone number to him the very next day, on July 1. Am. Compl. ¶ 39. Thus, plaintiff lacks standing to bring his CPPA claim.

Likewise, Plaintiff lacks standing to pursue his claim under the FCA because he fails to show any relevant injury caused by US Mobile's actions. The FCA imposes a duty upon telecommunications carriers to protect the confidentiality of their customers' proprietary network information. 47 U.S.C. § 222(c)(1). Plaintiff complains that he suffered a privacy intrusion within the meaning of this statute when the scammers stole his phone number, leaving him with "a feeling of deep personal violation." Am. Compl. ¶ 39. But, at most, the invasion of privacy and distress Plaintiff experienced were caused by AT&T's failure to verify Plaintiff's identity when it permitted the port-out of his number. Plaintiff does not allege any facts indicating that at the time, US Mobile had any reason to suspect that the initiated transfer was fraudulent. Because Plaintiff's injuries were not caused by the "challenged acts of" US Mobile, Plaintiff cannot satisfy the causation prong of standing. *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc). Accordingly, the court dismisses his CPPA and FCA claims without prejudice. *See Havens v. Mabus*, 759 F.3d 91, 98 (D.C. Cir. 2014) ("A jurisdictional dismissal—which is *not* an adjudication on the merits under Rule 41(b)—is, then, a dismissal without prejudice.").

Plaintiff's gross negligence claim, however, is a different story. "[A]ssum[ing] the truth of all material factual allegations in the complaint" and "granting [P]laintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)), as it must, the court finds that Plaintiff has demonstrated an injury-in-fact fairly traceable to US Mobile's conduct which could be redressed by a favorable decision. As described above, Plaintiff suffered financial and reputational harms, among others, because of his inability to regain control over his phone number for almost a week. These harms are cognizable under Article III. *See*

*TransUnion*, 594 U.S. at 425. It is "substantially probable" that some of the harms occurred because US Mobile unreasonably dragged its feet in responding to Plaintiff's complaint. *Fla. Audubon*, 94 F.3d at 663; *see* Am. Compl. ¶¶ 31–32. And a finding of gross negligence, along with a damages award, would "remedy the injury suffered" by compensating Plaintiff for his losses. *Steel Co.*, 523 U.S. at 107. Plaintiff therefore has standing to assert his gross negligence claim.

**B. US Mobile's Rule 12(b)(6) Motion to Dismiss**

US Mobile contends that Plaintiff's gross negligence claim should nevertheless be dismissed because Plaintiff has failed to state a plausible claim for relief. *See* Mot. to Dismiss at 6–16. To survive a Rule 12(b)(6) motion, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). That said, the court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Iqbal*, 556 U.S. at 678).

Plaintiff's gross negligence claim is rooted in D.C. tort law and this court sits in diversity jurisdiction, so the court will apply "state substantive law and federal procedural law" to decide whether the claim survives. *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012)

(cleaned up). In other words, "District of Columbia law" supplies the substantive elements of Plaintiff's gross negligence claim, but "the Federal Rules of Civil Procedure [will] govern the question whether [Plaintiff] has pleaded sufficient facts to state a claim." *Bain v. Gary, Williams, Parenti, Watson, & Gary, P.L.*, 53 F. Supp. 3d 144, 147 (D.D.C. 2014).

US Mobile first urges the court to dismiss Plaintiff's claim because he labeled it "gross negligence" (instead of mere "negligence"), and because gross negligence "is not a stand-alone cause of action in the District of Columbia." Mot. to Dismiss at 6 (quoting *Staggs v. Smith & Wesson*, No. 21-cv-2535, 2022 WL 444110, at *4 (D.D.C. Feb. 14, 2022)). True, "the law of the District of Columbia does not recognize degrees of negligence," and "courts have traditionally analyzed whether a defendant acted with gross negligence only in limited circumstances where gross negligence is a specific element of a claim or defense," or "for equitable reasons"—circumstances inapplicable here. *Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 115 (D.D.C. 2012) (cleaned up). For the most part, however, courts have dismissed gross negligence claims only when the complaint also contains a cause of action for "ordinary" negligence. *See, e.g.*, *id.* at 116; *Bradley v. NCAA*, 249 F. Supp. 3d 149, 168–69 (D.D.C. 2017); *Search v. Uber Techs., Inc.*, 128 F. Supp. 3d 222, 237–38 (D.D.C. 2015). Indeed, in resolving motions to dismiss, courts have repeatedly construed isolated claims for "gross negligence" as ones for "ordinary" negligence. *See, e.g.*, *J.Q.R. ex rel. Rogers v. D.C. Gov't*, No. 20-cv-02477, 2022 WL 3444844, at *2 (D.D.C. Aug. 17, 2022); *Est. of Wilson v. District of Columbia*, No. 23-cv-1987, 2024 WL

4370850, at *5 (D.D.C. Sep. 29, 2024). Accordingly, the court will construe Plaintiff's sole negligence claim as a claim for ordinary negligence.[1]

Even construed as a claim for ordinary negligence, however, Plaintiff fails to plead sufficient facts to survive a motion to dismiss. "To prevail on a negligence claim under D.C. law, 'a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused an injury to the plaintiff.'" *Bunting v. D.C. CVS Pharmacy, LLC*, 172 F.4th 36, 40 (D.C. Cir. 2026) (quoting *KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 507 (D.C. 2023)). Here, Plaintiff falters at the very first element. He asserts that US Mobile has both a "common law duty" and a "regulatory duty" to "safeguard the telephone numbers of its paying customers." Am. Compl. ¶¶ 77, 78. But Plaintiff was not a paying customer of US Mobile. Quite the opposite: He wanted his number transferred back to his provider, AT&T. So US Mobile owed no duty to him.

In any event, the common law and federal regulations Plaintiff references do not plausibly suggest that US Mobile owed him a duty of care on the facts of this case. Under D.C. law, "a defendant typically only assumes a duty of care towards a plaintiff 'once the defendant enters into a relationship'" with him. *Roe v. Doe*, 401 F. Supp. 3d 159, 165 (D.D.C. 2019) (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 794 (D.C. 2011)) (cleaned up). But US Mobile had no preexisting relationship with Plaintiff before the port-over of his line. And the scammers'

[1] Contrary to US Mobile's argument, *Sai v. Transportation Security Administration*, 326 F.R.D. 31 (D.D.C. 2018) and *Powell v. Yellen*, No. 22-5200, 2023 WL 8947132 (D.C. Cir. Dec. 28, 2023) do not foreclose Plaintiff's so-called "improper effort to amend the Amended Complaint through his opposition brief." US Mobile's Opp'n at 2–3. Those cases involved wholesale additions of entirely unrelated causes of action to the complaint. That is not the case here, where the court merely construes an existing claim for gross negligence as one for ordinary negligence.

unilateral act of transferring Plaintiff's number to US Mobile hardly forged a relationship which US Mobile had "enter[ed] into" with Plaintiff. *Id.* Likewise, Plaintiff relies upon 47 C.F.R. § 64.2010(a), a regulation which implements the FCA's privacy provisions, but that regulation only requires service providers to "take reasonable measures to discover and protect against attempts to gain unauthorized access" to their *customers'* information. As discussed above, Plaintiff was not a customer of US Mobile within any reasonable understanding of the word. *See* 47 C.F.R. § 64.2003(f) (defining customer as "a person or entity to which the telecommunications carrier is currently providing service"). Accordingly, the court will dismiss Plaintiff's claim without prejudice.[2] *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("[A] complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to Rule 12(b)(6) but not dismissal with prejudice.").

### C. Plaintiff's Motion to Amend the Complaint

As an apparent last resort, Plaintiff moves to amend his Complaint for the second time, ostensibly to cure the deficiencies US Mobile identified in its motion to dismiss. Under Rule 15(a)(1), a party can "amend its pleading" only "once as a matter of course" twenty-one "days after serving it." Fed. R. Civ. P. 15(a)(1), (a)(1)(A). Thereafter, he must obtain leave of court to amend his complaint unless the defendant consents. *Id.* 15(a)(2). Such leave may be denied, however, if there has been "undue delay . . . on the part of the movant," *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996) (cleaned up), if allowing amendment would be

[2] The court need not address in depth Plaintiff's theory, unsupported by precedent or common sense, that he was a "customer" of US Mobile because he "unwittingly and involuntarily received the services of [its] network." Pl.'s Opp'n at 6 (citing Am. Compl. ¶¶ 13, 31–35). As Plaintiff's own acts demonstrate, he had a consumer relationship with AT&T, not US Mobile, and wanted his number transferred back immediately.

"futile" because "the proposed claim would not survive a motion to dismiss," *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012), or if the proposed claim "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action," *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991).

The court denies Plaintiff leave to add paragraphs 32, 33, 34, 109, 110, 111, and 116 of the proposed Second Amended Complaint ("SAC"). *See* ECF No. 24-1. These paragraphs largely contain factual detail about Plaintiff's interactions with US Mobile from June 27 to June 30 and do nothing to demonstrate that US Mobile plausibly owed a duty of care to him, that he relied upon US Mobile's alleged misrepresentations, or that US Mobile was responsible for his invasion of privacy. Because the proposed amendments would therefore be "futile," the court denies leave to add them. *Hettinga*, 677 F.3d at 480.

The court, however, grants Plaintiff's request to add paragraphs 97, 98, and 105 of the proposed SAC. Those paragraphs describe AT&T's lack of security measures, which exposed Plaintiff to the port-over attack and recount the terms and conditions of using AT&T's services. Because AT&T has consented to these additions, *see* Pl.'s Partial Consent Mot. to Amend Compl. at 2, ECF No. 24, the court grants Plaintiff's motion to add those paragraphs.

## III. CONCLUSION

For the foregoing reasons, the court will GRANT US Mobile's Motion to Dismiss, ECF No. 16, and GRANT in part and DENY in part Plaintiff's Motion to Amend the Complaint, ECF No. 24. A separate Order accompanies this Memorandum Opinion.

Date: August 21, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge