**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PATRICK C. HORRELL,**<br><br>*Plaintiff*,<br><br>v.<br><br>**AT&T MOBILITY, LLC, *et al.*,**<br><br>*Defendants*. | Civil Action No. 25-cv-2017 (TSC) |

**OPINION AND ORDER**

Defendant AT&T Mobility, LLC ("AT&T") has moved to compel arbitration and to stay this litigation. ECF No. 22. The motion seeks to have Plaintiff's common law and statutory claims against AT&T for its alleged failure to protect Plaintiff from a scam decided by an arbitrator. For the following reasons, AT&T's motion is GRANTED.

The court has already recounted the facts of this case in some detail. *See* Mem. Op. at 1–2, ECF No. 32. As relevant here, Plaintiff has been an AT&T customer since 2007. Neidhart Decl. ¶ 4, ECF No. 22-2. In 2014, he upgraded his phone, which required him to agree to AT&T's Wireless Customer Agreement ("WCA"). *See* Ex. C, ECF No. 22-2. That agreement required Plaintiff and AT&T to "arbitrate all disputes and claims between" them. *See* Ex. B § 2.2(1), ECF No. 22-2. The WCA also permitted AT&T to change its terms of service, so long as it provided notice of any material changes. *See id.* § 1.3. In 2021, AT&T informed Plaintiff via email about changes to its service agreement. *See* Neidhart Decl. ¶ 6; Ex. D, ECF No. 22-2; Ex. E, ECF No. 22-2. But the new agreement left the WCA's arbitration provision materially unchanged, similarly requiring Plaintiff to "arbitrate all disputes and claims" against AT&T. *See* Ex. A § 1.3.2.1, ECF No. 22-2.

Plaintiff initiated this lawsuit in June 2025; he claims he fell victim to a scam and lost control over his phone number for nearly a week. Am. Compl. ¶¶ 15-32, ECF No. 5. He sued AT&T for gross negligence and violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901–28-3913, and the Federal Communications Act, 47 U.S.C. §§ 206, 222, seeking $50 million in damages. *Id.* ¶¶ 59–118. In response, AT&T moved to compel arbitration under the Federal Arbitration Act and stay this case. ECF No. 22.

The Federal Arbitration Act typically requires courts to enforce arbitration clauses in contracts "involving commerce" unless the agreement is revocable on grounds generally applicable to all contracts. 9 U.S.C. § 2; *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Because "arbitration is strictly a matter of consent," a court must first ascertain what "the parties have agreed to submit to arbitration." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (cleaned up) (first quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019); and then quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). In doing so, it "should apply ordinary state-law principles that govern the formation of contracts." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (quoting *Kaplan*, 514 U.S. at 944). Next, a court must determine whether the agreement survives "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Jackson*, 561 U.S. at 68 (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). The party seeking to compel arbitration bears the burden of proving that a valid agreement exists, *see Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 373 (D.C. Cir. 2020), and the court will grant a motion to compel only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law," *Aliron*, 531 F.3d at 865 (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The record establishes that Plaintiff agreed to arbitrate the common law and statutory claims he now brings against AT&T. In 2014, he accepted the terms of the WCA as part of a hardware upgrade. *See* Ex. C, ECF No. 22-2. In doing so, he consented to the WCA's provision that "claims arising out of or relating to any aspect of the relationship between" Plaintiff and AT&T would be submitted to arbitration, "whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." Ex. B § 2.2(1); *see also* Ex. A § 1.3.2.1 (updated agreement containing practically identical language). The present dispute arises out of Plaintiff's relationship with AT&T because it concerns the service provider's failure to adequately protect his number and any misrepresentations it may have made to Plaintiff during his service. The arbitration provision thus squarely covers Plaintiff's tort and statutory claims.

Plaintiff offers a panoply of reasons for why he is not bound by the WCA, but all fail to persuade. First, he suggests that he never accepted the WCA because he did not sign it. Pl.'s Opp'n at 4, ECF No. 30. But under District of Columbia law, "a signed writing is not essential to the formation of a contract." *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995). Rather, mutual assent can also be shown by the "conduct of the parties." *Apprio, Inc. v. Zaccari*, 104 F.4th 897, 907 (D.C. Cir. 2024) (quoting *Davis*, 664 A.2d at 838). By accepting the phone upgrade and continuing to use AT&T's services, Plaintiff "objectively manifested" his "intent to be bound" by the arbitration provision. *Id.* (cleaned up) (quoting *Dyer v. Bilaal*, 983 A.2d 349, 357 (2009)). Next, Plaintiff asserts that AT&T has not shown that the arbitration provision was "presented for review at the time the equipment was upgraded." Pl.'s Opp'n at 5. But the Customer Service Summary ("CSS") that AT&T provides memorializes the 2014 transaction and indicates that Plaintiff did indeed agree to the WCA "and its arbitration clause" at the time of the upgrade. *See* Ex. C. Last, Plaintiff argues that his gross negligence claim falls outside the scope of the arbitration

clause because both AT&T and US Mobile may be jointly and severally liable to him, and the arbitration clause does not address claims with such a "two-party nature." Pl.'s Opp'n at 2–3. But the court has already granted US Mobile's motion to dismiss, leaving AT&T as the sole Defendant in this case. *See* Order, ECF No. 33. Whatever the merits of Plaintiff's argument, it is no longer relevant.[1]

Plaintiff also contends that the arbitration provision is unenforceable because it is unconscionable under District of Columbia law. Under D.C. law, proving unconscionability requires showing that "one of the parties lacked a meaningful choice" to enter into the agreement and that "the terms of the contract are unreasonably favorable to the other party." *Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 480 (D.C. Cir. 1996) (quoting *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1251 (D.C. 1990)). "These two elements are often referred to as procedural unconscionability and substantive unconscionability, respectively." *Simon v. Smith*, 273 A.3d 321, 331 (D.C. 2022) (cleaned up) (quoting *Urb. Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983) (per curiam)).

Considering "all the circumstances surrounding the transaction," as it must, the court finds that the arbitration agreement was not procedurally unconscionable. *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 98 (D.D.C. 2013) (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir.1965)). The CSS indicates that Plaintiff had "a reasonable opportunity to understand the terms of the" WCA when he upgraded his equipment in 2014. *Id.* (quoting *Williams*, 350 F.2d at 449); *see* Ex. C. And the very first page of the WCA discloses in bold capital letters that the "agreement requires the use of arbitration on an individual basis to resolve disputes."

[1] Because the court finds that the arbitration clause in the WCA and the 2021 service agreement were materially similar, it declines to address Plaintiff's protestations about the manner in which AT&T provided notice of the updated agreement, *see* Pl.'s Opp'n at 7.

*See* Ex. B. As an attorney, Plaintiff had the "obvious education" to understand the agreement. *Fox*, 920 F. Supp. 2d at 98 (quoting *Williams*, 350 F.2d at 449). He thus had "adequate notice" of and an "opportunity to read" the WCA, *Forrest v. Verizon Comms., Inc.*, 805 A.2d 1007, 1010 (D.C. 2002) (quoting *Nickens v. Lab. Agency of Metro. Washington,* 600 A.2d 813, 817 n. 2 (D.C.1991)), even if he did not do so because the CSS linked to the WCA instead of displaying the arbitration clause itself, *see* Pl.'s Opp'n at 7.

Nor was the agreement substantively unconscionable. "Substantive unconscionability requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience. A substantively unconscionable contract is one that 'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Fox*, 920 F. Supp. 2d at 99 (quoting *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 95 (D.D.C. 2012)). The WCA's arbitration clause falls far short of this demanding standard. It does not restrict Plaintiff's ability to raise any substantive claims. Nor does it impede Plaintiff's ability to litigate his gross negligence claim against AT&T even though US Mobile has been dismissed from this case. *Contra* Pl.'s Opp'n at 7–8. Indeed, the agreement obliges AT&T to pay "more than the amount of the arbitrator's award" and double attorneys' fees under certain circumstances. Ex. B § 2.1.

To be sure, the arbitration agreement limits discovery. *See, e.g.*, *id.* § 2.2(3). Plaintiff complains about the unavailability of "pre-hearing discovery," such as subpoenas to third parties, in particular. Pl.'s Opp'n at 8–9. But arbitration need only provide "more than minimal discovery" for the adjudication of statutory and common law claims to suffice. *Fox*, 920 F. Supp. 2d at 100 (citing *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)). That standard is met when, as here, the arbitrator has discretion to "manage any necessary exchange of information

among the parties" while "safeguarding each party's opportunity to fairly present its claims and defenses." Am. Arb. Ass'n, *Commercial Arbitration Rules and Mediation Procedures* R-22(a) (effective Oct. 1, 2013), https://perma.cc/FMM5-DDQA; *see also* Am. Arb. Ass'n, *Consumer Arbitration Rules* R-22, R-23 (effective Sept. 1, 2014), https://perma.cc/T9CM-7KWN (similar). Accordingly, the court grants AT&T's Motion to Compel Arbitration.

The court also grants AT&T's motion to stay this case. The Federal Arbitration Act "says that a federal court 'shall . . . stay' proceedings" when a party applies for a stay in a matter referable to arbitration. *Jules v. Andre Balazs Props.*, 146 S. Ct. 1209, 1215 n.1 (2026). Accordingly, "a stay is required." *Id.* (citing *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024)).

For the foregoing reasons, AT&T's Motion to Compel Arbitration and Stay Litigation is GRANTED.

It is SO ORDERED.

Date: August 21, 2026

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge